IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:20-cv-00196-MR

| | |
|---|---|
| JAMES B. CHARLES, ) ) Petitioner, ) ) vs. ) ) EDDIE M. BUFFALOE, Secretary, ) North Carolina Department of ) Public Safety, ) ) Respondent. ) _____ ) | **O R D E R** |

**THIS MATTER** is before the Court on remand from the Fourth Circuit Court of Appeals. Also before the Court are three motions that were filed by Petitioner following the issuance of the appellate decision: a Motion to Renew Request to Appoint Counsel and to Schedule and Conduct an Evidentiary Hearing [Doc. 41], a Motion to Correct and Include Missing Part of the Trial Transcripts [Doc. 43], and a Motion to Expedite [Doc. 50].

**I.    BACKGROUND**

The Court entered an Order on September 27, 2022, granting the Respondent's Motion for Summary Judgment and disposing of the Petitioner's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus. [Doc. 30].

The Court's Order addressed the following grounds raised in the Petitioner's § 2254 petition: (1) actual innocence of the first-degree murder charge; (2) ineffective assistance of counsel based on (a) counsel's statements made to Petitioner during trial, (b) counsel's denial of access to discovery, and (c) counsel's failure to play Steve Zimmerman's 911 call to jury; and (3) unfair prejudice due to admission of photographs of the Petitioner in jail uniform. [Doc. 30].

The Petitioner filed an appeal of the Court's Order. In its opinion issued on November 8, 2023, the Fourth Circuit held that this Court did not adjudicate all the claims raised in the § 2254 petition and remanded the matter for consideration of the unresolved issues. [Doc. 39]. Specifically, the Fourth Circuit held that this Court

> did not address whether trial counsel rendered ineffective assistance by failing to show to the jury allegedly exculpatory statements in letters written by Wendy Barnhill and by failing to object to the introduction at trial of photographs of [Petitioner] in a prison uniform; whether appellate counsel rendered ineffective assistance by failing to raise on direct appeal ineffective assistance of trial counsel claims; and whether [Petitioner's] due process right to a fair trial was violated by the prosecution's allegedly prejudicial remarks during closing arguments and by [Petitioner's] pretrial conditions of confinement.

[Doc. 39 at 2].

As required by the foregoing, this Court will first address the two claims of ineffectiveness of trial counsel, then the claim of ineffectiveness of

2

Case 1:20-cv-00196-MR    Document 52    Filed 12/31/24    Page 2 of 17

appellate counsel, and finally the two due process claims. The Court will also address the Petitioner's three pending motions.

## II. STANDARD OF REVIEW

Habeas relief may be granted to a state prisoner if the state court's last adjudication of a claim on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

Alternatively, relief may be granted to a state prisoner if the state court's last adjudication of a claim on the merits "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In reviewing a § 2254 petition, the Court is guided by Rule 4 of the Rules Governing Section 2254 Cases, which directs the district court to dismiss a petition when it plainly appears from the petition and any exhibits that the petitioner is not entitled to relief. Rule 4, 28 U.S.C. foll. § 2254.

3

## III. DISCUSSION

### A. Ineffective Assistance of Trial Counsel

The right to counsel guaranteed by the Sixth Amendment includes the "right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). To successfully challenge a conviction based on ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in Strickland, which requires the petitioner show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) counsel's deficient performance prejudiced the defense. Strickland, 466 U.S. at 688, 692.

The first prong requires that petitioner show that counsel's performance was deficient by articulating specific acts or omissions that fell "outside the wide range of professionally competent assistance." Id. at 690. The petitioner must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 687).

To establish prejudice under the second prong, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's

4

unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The petitioner must show that counsel's error worked to his "actual and substantial disadvantage," not merely that it created a "possibility of prejudice." Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).

The court need not analyze both prongs if petitioner makes an insufficient showing on one. Strickland, 466 U.S. at 697. Failure to satisfy either prong is fatal to a petitioner's claim. Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir. 1992).

### 1. Letters written by Wendy Barnhill

The Petitioner claims ineffective assistance of counsel because "his trial attorney did not properly employ in [his] defense certain letters written to him by [Ms. Barnhill]." [Doc. 13-10 at 4]. The Petitioner claims that his trial attorney "did not adequately point out to the jury what the letters said," and that "the letters show that [Ms. Barnhill] was the one who actually stabbed or killed the Defendant [sic] with a knife." [Id. at 5]. The letters, however, "were offered by his attorneys, admitted into evidence by the court, and available for review by the jury." [Id.]. They were also used to cross-examine Ms. Barnhill. [Id. at 7].

5

Given that trial counsel admittedly did use the letters at trial, it cannot be said that his failure to use them in the specific way that the Petitioner would have wanted rises to the level of an ineffective assistance of counsel claim. Indeed, trial counsel questioned Ms. Barnhill about the letters and their contents, including some specific portions cited by the Petitioner. [Doc. 13-13 at pp 498-505; Doc. 1 at 15-16]. The Petitioner has not plausibly alleged that trial counsel was acting "outside the wide range of professionally competent assistance," nor has he alleged that this act by counsel worked to his "actual and substantial disadvantage," or created any probability of a different result at trial. For the foregoing reasons, the Petitioner has failed to plausibly state a claim for ineffective assistance of counsel on this basis, and this claim will be dismissed.

### 2. Trial Photographs of Petitioner in Prison Uniform

The Petitioner also claims ineffective assistance of trial counsel because his attorney did not object to the State introducing a photo of him at trial in a striped jail uniform and handcuffs "as evidence that [he's] a murderer." [Doc. 1 at 38]. The State introduced four photographs of Petitioner. [Doc. 13-14 at pp 2-5]. The first photograph depicts Petitioner from the knees up, dressed in prison clothes, and sitting on a bench while handcuffed, his left hand showing his open palm. The following three

6

photographs show only the front and back of Petitioner's hands, in handcuffs, against the backdrop of his prison uniform pants. [Id.]. The State introduced these photographs at Petitioner's trial through the testimony of deputy Vince Griggs, who spoke to and interacted with the Petitioner while he was under arrest shortly after the offense. Deputy Griggs noticed that Petitioner "had a cut above his left eye. And then his left hand, he had a cut on it and it was bleeding." [Doc. 13-13 at 349]. Defense counsel questioned Deputy Griggs regarding the photographs to establish that, when Griggs first met Petitioner, one of Petitioner's hands was actively bleeding while the photographs only showed wounds on Petitioner's hands following hemostasis. [Id. at 360-61]. Deputy Griggs then testified that Petitioner's hand was still bleeding when he met with Petitioner following the offense. [Id.].

The trial transcript makes clear that the State's purpose for offering the photographs into evidence was to show the injuries sustained by Petitioner during the offense. [Id.]. While the Petitioner was dressed in prison garb in the photographs, this detail was not brought to the attention of the jury by witness testimony or by argument of counsel. The Petitioner has not alleged any facts, beyond the bald assertion that his prison clothing provides "evidence that [he's] a murderer[,]" to show that his attorney was ineffective for failing to object to the photographs.

7

On the contrary, defense counsel had a sound reason not to object to the introduction of the photographs. The main component of Petitioner's defense at trial was his assertion that he did not act in concert with Wendy Barnhill but rather sustained injuries to his hands while attempting to prevent her from fatally stabbing the victim. [Doc. 13-13 at pp 1021 to 1023]. The photographs introduced by the State arguably were key pieces of evidence favorable to the Petitioner. The jury reasonably could have concluded that the injuries to Petitioner's hands depicted in these images, and the clarifying testimony of Deputy Griggs, corroborated Petitioner's asserted defense that he was attempting to prevent Barnhill from killing the victim. As such, the decision of trial counsel in this regard was well within the range of professional competence, and the Petitioner was arguably assisted, rather than prejudiced, by the introduction of these photographs. Accordingly, this claim clearly fails both prongs of the Strickland analysis. This claim will therefore be dismissed.

B.  **Ineffective Assistance of Appellate Counsel**

The Petitioner further claims ineffective assistance of his appellate counsel for failing to raise on appeal the issue of ineffective assistance of trial counsel. [Doc. 13-10 at 7]. Appellate counsel focused the Petitioner's appeal on the lack of evidence to support the trial court's instructions to the

8

jury that Petitioner "acted in concert" with Wendy Barnhill in committing the murder. [Doc. 13-4 at 19; Doc. 13-6 at 4].

First, given that this Court has found no merit in any of Petitioner's claims for ineffective assistance of trial counsel, the Petitioner has not shown that the failure of his appellate counsel to raise any such issues was prejudicial to his lack of success on appeal. Additionally, it is quite likely that appellate counsel thought attacking the trial court's jury instruction was the Petitioner's strongest argument on appeal and therefore did not pursue other weaker arguments that might detract from it.

This allegation, therefore, does not plausibly allege that appellate counsel's work fell "outside the wide range of professionally competent assistance." As such, the Petitioner has failed to state a claim on this issue, and it will be dismissed.

## C. Due Process

### 1. Alleged Prosecutorial Misconduct

The Petitioner claims a violation of his due process rights because at trial, the prosecutor made certain prejudicial remarks about the Petitioner. [Doc. 44 at 21, 25]. The Petitioner specifically alleges that the prosecutor "repeatedly berated me for indulging in my right to remain silent through the trial," which further "inflamed the jury." [Id. at 21-22].

9

Since Petitioner did not bring a constitutional claim regarding the alleged prosecutorial misconduct on direct appeal to the North Carolina Court of Appeals, and since he also failed to bring such claim to the attention of the State trial court on state post-conviction review via his MAR, he has procedurally defaulted this claim. This is so because, due to "basic principles of federalism," federal courts are only permitted to review "those state-court decisions that implicate federal constitutional rights." Kornahrens v. Evatt, 66 F.3d 1350, 1357 (4th Cir. 1995). If a defendant convicted in state court fails to identify and pursue a federal constitutional claim on direct appeal or in state post-conviction proceedings, the state court is deprived of the opportunity to evaluate the claim and the defendant "defaults by not following proper state appellate procedure, causing the state courts to rule against him solely on state-law procedural grounds." Id. Federal habeas review in this circumstance is inappropriate because the state's judgment in such a case is based on an "independent and adequate state ground" since no federal constitutional claim was ever presented to or reviewed by the state. Coleman v. Thompson, 501 U.S. 722, 729–30 (1991).

"A procedural default ... occurs when a habeas petitioner fails to exhaust available remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement

would now find the claims procedurally barred.'" Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (quoting Coleman, 501 U.S. at 735 n.1). In this case, Petitioner pursued a direct appeal and did not raise any constitutional claim regarding his assertion of prosecutorial misconduct. Pursuant to N.C.R. App. P. 28(a), any such argument was therefore abandoned ("The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned."). Petitioner did not raise this constitutional challenge in his MAR either. Petitioner, present throughout his trial, was aware of everything the prosecutor said to the jury. Had Petitioner brought his constitutional claim regarding the prosecutor's comments in his MAR, it would have been barred by N.C. Gen. Stat. § 15A-1419(a)(2) (MAR should be denied when, upon a previous appeal, the defendant was able to adequately raise the ground or issue underlying the present motion but did not do so). And if Petitioner attempted to raise this constitutional claim now in a new MAR, the argument would be barred by N.C. Gen. Stat. § 15A-1419(a)(1) (MAR should be denied when, upon a previous MAR, the defendant was able to adequately raise the ground or issue underlying the present motion but did not do so).

The only way for Petitioner to avoid procedural default is through a showing of "cause and actual prejudice." Reed v. Ross, 468 U.S. 1, 11 (1984)

(citation omitted). "Cause for a procedural default . . . ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." Murray, 477 U.S. at 492. Then, to establish prejudice, the prisoner must show not merely a substantial federal claim, such that "'the errors at ... trial created a possibility of prejudice," but rather that the constitutional violation "worked to his actual and substantial disadvantage.'" Id. at 494 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

Petitioner cannot show cause or actual prejudice for his defaulted claim. Petitioner was represented by counsel and has not alleged any "external impediment" that prevented him from objecting to the prosecutor's comments or raising a constitutional claim on direct appeal or in his MAR. Even if Petitioner could show cause, he cannot demonstrate that the error worked to his actual and substantial disadvantage because his claim is meritless.

The "clearly established Federal law" relevant here pursuant to the AEDPA standard is the Supreme Court's decision in Darden v. Wainwright, 477 U.S. 168 (1986), which explained that a prosecutor's improper comments will be held to violate the constitution only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id. at 181 (internal quotation omitted). The Court has reviewed the

alleged improper remarks cited by the Petitioner and finds that they present no due process issue. In one instance, the prosecutor confirmed that the Petitioner chose not to talk to law enforcement at a certain point in time after previously indicating that, upon leaving the scene of the offense, he would speak with law enforcement. [Doc. 44-2 at 47]. In another instance, the prosecutor similarly confirmed that the Petitioner had an opportunity to talk to law enforcement and chose not to do so. [Id. at 52]. The prosecutor at no point made any value judgment to the jury as to these choices by the Petitioner, nor did he imply the Petitioner had any obligation to speak to law enforcement. He instead appeared to be focused on establishing the facts surrounding the offense.

The Petitioner also takes issue with the prosecutor's closing argument for "berat[ing] [his] character and instruct[ing] the jury to consider [his] character" in making their decision. [Doc. 44 at 25]. Specifically, the Petitioner takes issue with statements that he had a history of breaking rules, was dating people on parole, was talking to people in jail, and was around narcotics. [Doc. 13-13 at pp 1158 to 1173]. The prosecutor, however, made arguments based on the facts admitted and established during the presentation of evidence. Petitioner points to no legal authority to support his

claim that such arguments were improper, nor does he argue that the admission of any of the facts underlying these arguments was unlawful.

Petitioner's federal constitutional claim, coming as it does for the first time in this Court, is not cognizable because he had not first "exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement "is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." Breard, 134 F.3d at 619. For the foregoing reasons, the Petitioner has failed to state a claim for due process based on the remarks of the prosecutor. This claim will therefore be dismissed.

### 2. Pretrial Confinement Conditions

The Petitioner also claims a due process violation on the basis that he was "placed into solitary confinement for over 900 days having committed no jail infractions," and "was subjected to forced religious programming by the state." [Doc. 1 at 38]. To the extent that Petitioner claims his pretrial detention in state court was in violation of the Constitution or laws or treaties of the United States, his remedy was to then seek a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Relief under § 2254 is available only to a petitioner in custody pursuant to a state court *judgment.* 28 U.S.C. § 2254(a) (emphasis added). Petitioner's pretrial detention was pursuant to an arrest,

not a state court judgment. Accordingly, Petitioner may not obtain relief under § 2254 for his due process claim relating to his pretrial confinement, and this claim will be dismissed.

### D. Petitioner's Subsequent Motions

The Petitioner's Motion to Renew Request to Appoint Counsel and to Schedule and Conduct an Evidentiary Hearing [Doc. 41] is an eleven-page hand written document that generally reiterates the Petitioner's claim that trial counsel was ineffective because said counsel did not use the letters written by Barnhill during trial to the satisfaction of Petitioner. The Court has addressed the merits of this specific ineffectiveness claim. This is not a colorable claim, for the reasons set forth herein. Any appointed counsel would have been of no benefit in presenting such a claim in a more effective manner. Therefore, this motion is denied.

The Petitioner's Motion to Correct and Include Missing Part of the Trial Transcripts [Doc. 43] is a nine-page hand written document asserting that the trial transcript is incomplete. According to the Petitioner, "I poured over the trial transcripts trying to locate certain statements I made on the stand, during trial, before the jury and I discovered that many of my responses are not fully recorded into the record." [Doc. 43 at 6]. Petitioner contends that while on the witness stand, he "blurted out … I do not use drugs. My attorney

(Paul Welch) told me the jury would never believe me if I didn't say I was using drugs (so I agreed to say it)." [Id.]. Petitioner does not set forth any other purportedly omitted statements. Significantly, however, Petitioner does not offer any argument about what effect his purportedly omitted statement, or any other unidentified and purportedly omitted statements, would have had on the outcome of his trial. This Motion will be denied.

The Petitioner's Motion to Expedite [Doc. 50] is a four-page hand written document requesting the Court to act on the remand decision by the Fourth Circuit. The Court has addressed the issues identified in the appellate court's decision and Petitioner's Motion will be denied as moot.

## IV. CONCLUSION

In accordance with the Fourth Circuit's remand, this Court has addressed the remaining claims in the petition and finds they are without merit. Further, the Petitioner's Motion to Renew Request to Appoint Counsel and to Schedule and Conduct an Evidentiary Hearing [Doc. 41] and the Petitioner's Motion to Correct and Include Missing Part of the Trial Transcripts [Doc. 43] are without merit and shall be denied. Finally, the Petitioner's Motion to Expedite [Doc. 50] shall be denied as moot.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability. See 28 U.S.C. §

2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (noting that, in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that, when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) The Petition for Writ of Habeas Corpus [Doc. 1], filed pursuant to 28 U.S.C. § 2254, is **DENIED** and **DISMISSED**;

(2) The Petitioner's Motion to Renew Request to Appoint Counsel and to Schedule and Conduct an Evidentiary Hearing [Doc. 41], Motion to Correct and Include Missing Part of the Trial Transcripts [Doc. 43], and Motion to Expedite [Doc. 50] are **DENIED**; and

(3) The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

**IT IS SO ORDERED**.

Signed: December 31, 2024

Martin Reidinger
Chief United States District Judge